Case No. 1:13-cv-01544-RLW
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEPHEN THOMAS YELVERTON )
)
Appellant/Debtor )
)           Civil Action No. 1:13-cv-01544-RLW
v. )           (filing fee was paid on October 22, 2013)
)
WENDELL W. WEBSTER )           Bankruptcy Proceeding No. 09-00414
Chapter 7 Trustee )


Appeal from the United States Bankruptcy Court
for the District of Columbia

BRIEF OF APPELLANT

Stephen Thomas Yelverton, Pro Se
601 Pennsylvania Ave., N.W.,
Suite 900 South
Washington, DC 20004
Tel. 202-702-6708
Fax: 202-403-3801
styelv@aol.com

1

<u>Table of Contents</u>                                      Page(s)

Table of Cases and Authorities……………………………………… .   3-4

Statement of the Basis of Appellate Jurisdiction…………………….   5

Statement of the Issues Presented and
   Applicable Standard of Appellate Review………………………   6

Statement of the Case……………………………………………. .   7

Statement of the Facts……………………………………………   9

Summary of Arguments……………………………………………   15-16

Arguments………………………………………………………   17

   (a) The Chapter 7 Trustee's Settlement is VOID as being
         procured by fraud on the Bankruptcy Court………………….   17
         (This Issue relates to Case No. 1:13-cv-01544-RLW)

   (b) The <u>Decision</u>, entered August 8, 2012, is VOID for lack
         of subject-matter jurisdiction and for "due process"
         violations by the Bankruptcy Court………………………...   21
         (This Issue relates to Case No. 1:13-cv-01544-RLW)

   (c) The Bankruptcy Court acted contrary to <u>United States v. Kras</u>,
         409 U.S. 434, 440 (1973), in denying the Application for
         In Forma Pauperis status filed by the Debtor for waiver
         of the Appeal filing fee…………………………………….   23
         (This Issue relates to Case No. 1:13-cv-01546-RLW)

   (d) The Bankruptcy Court has no jurisdiction to act
         on Appeal Fee Waivers……………………………………….   25
         (This Issue relates to Case No. 1:13-cv-01546-RLW)

   (e)  The Bankruptcy Court violated the "due process" rights
         of the Debtor by directing the Chapter 7 Trustee to
         not file responses to Motions by the Debtor………………….   25
         (This Issue relates to Case No. 1:13-cv-01545-RLW)

Conclusions……………………………………………………….   26

Addendum ………………………………………………………..   27

Certificate of Service……………………………………………...   31

Table of Cases and Authorities

28 U.S.C. 158 (a)(1)……………………………………………………  5, 25

28 U.S.C. 1915 (a)……………………………………………………...   16

28 U.S.C. 1930 (f)…………………………………………….... …  15-16, 24

Fed. R. Civ. P., Rule 60 (b)(4) and (d)(3)………………………………  5, passim

D.C. Code, Section 14-306 (b)………………………………………...  14, 16, 23

Baltia Airlines, Inc. v. Transaction Mgmt, Inc.,
    98 F.3d 640, 642-643 (D.C. Cir. 1966)……………………………  17, 19, 21

Bowie v. Maddox,
    677 F.Supp.2d 276, 278-279 (D.D.C. 2010)……………………… 17, 19, 21

C.F.T.C. v.Weintraub,  471 U.S. 343, 352 (1984)………………………....  18

Cook v. Boorstin,763 F.2d 1462, 1468 (D.C. Cir. 1985)…………………  18

Freeman v. Seligson, 405 F.2d 1326, 1333 (D.C. Cir. 1968)……………  18

Ginsberg v. Granados, 963 A.2d 1134, 1139 (D.C. 2009)………………  24

Green v. American Federation of Labor,
    811 F.Supp.2d 250, 253 (D.D.C. 2011)…………………………… 22-23, 26

Hazel-Atlas Glass Co. v. Hartford Empire Co.,
    322 U.S. 238, 245-246 (1944)…………………………………… 17, 19, 21

Hope 7 Monroe Street Partnership Ltd. v. Riaso,
    473 B.R. 1, 6-7 (D.D.C. 2012)……………………………………  6

In Re Capitol Hill Group,
    313 B.R. 344, 348-349 (D.D.C. 2004)……………………..……  6

In Re Covington,
    368 B.R. 38, 41-42 (Bkrtcy. E.D. Cal. 2006)…………………… 19

In Re Delaney, 819 A.2d 968, 999 (D.C. 2003)…………………….....  24

In Re Jackson, 593 F.3d 171, 177 (2nd Cir, 2010)……………………  24

In Re Powell, 851 F.2d 427, 431, and n. 14 (D.C. Cir. 1988)…………….. 24-25

In Re Rodriguez Camacho,
    361 B.R. 294, 299 (1st Cir. BAP 2007)………………………………………… 5

In Re Ross, 475 B.R. 279, 282 (D.D.C. 2012)…………………………………… 19

Johnson v. District of Columbia,
    572 F.Supp.2d 94, 101 (D.D.C. 2008)………………………………… 18

Lockwood v. Bowles,
    46 F.R.D. 625, 631-632, n. 31 (D.D.C. 1969)………………………… 19, 21

Murray v. District of Columbia,
    52 F.3d 353, 355 (D.C. Cir. 1995)…………………………………… 17, 22-23

Nitzke v. Williams,490 U.S 319 325 (1989)……………………………………… 24

Owens v. District of Columbia,
    631 F.Supp.2d 48, 53 (D.D.C. 2009)……………………………………….. 18

Rogers v. Johnson-Norman,
    514 F.Supp.2d 50 (D.D.C. 2007)………………………………………. 25

Sills v. Bureau of Prisons,
    761 F.2d 792, 794-795 (D.C. Cir. 1985)……………………………… 24, 26

Speleos v. McCarthy, 201 B.R. 325, 330 (D.D.C. 1996)…………………………. 25

Summers v. Howard University,
    374 F.3d 1188, 1193 (D.C. Cir. 2004)………………………………… 17

Trupei v. U.S., 274 F.R.D. 38, 40 (D.D.C. 2011)……………………………… 22-23

United States v. Kras, 409 U.S. 434, 440 (1973)………………………………….. 16, 23

United Student Aid, Inc. v. Espinosa,
    130 S.Ct. 1367, 1377 (2010)……………………………………… 21, 23, 25-26

Corpus Juris Secundum, Section 11, p. 732…………………………………….. 17

Moore's Federal Practice,
    Section 60.33, at p. 359 (2nd Ed. 1985)……………………………………... 17, 19

Restatement (Second) Judgments, Section 26, cmt j……………………………… 17

Statement of the Basis of Appellate Jurisdiction

This is an Appeal from the U. S. Bankruptcy Court, pursuant to 28 U.S.C. 158 (a)(1), as to the discrete Issues of a Motion to Vacate the Chapter 7 Trustee's Settlement and the Decision, entered August 8, 2012, under Fed. R. Civ. P., Rule 60 (b)(3) and (4), and (d)(3); as to denial of applications for Fee Waiver to take an Appeal to the District Court; and as to an Order Suspending Response Deadlines. To be "final," a Bankruptcy Court need not resolve all of the issues in the proceeding, but it "must finally dispose of all the issues pertaining to a discrete dispute within the larger proceeding." In Re Rodriguez Camacho, 361 B.R. 294, 299 (1st Cir. BAP 2007).

The Approval of the Chapter 7 Trustee's Settlement is not Final, and thus this Issue as to the applicability of Fed. R. Civ. P., Rule 60 (b)(3) and (4), and (d)(3) to the Settlement, which is inherently related to Approval of the Settlement, must be consolidated with the review of the Settlement by the District Court in order to prevent "piecemeal" litigation. The Settlement has been Remanded from the Circuit Court of Appeals to the District Court for initial review.

All of the Issues raised in Case Nos. 1:13-cv-01544-RLW, 1:13-cv-01545-RLW, and 1:13-cv-01546-RLW arise out of the Motion to Vacate and related matters, and thus are inherently interrelated. For the convenience of the District Court, all Issues will be addressed in a consolidated Brief, with the same Brief being separately filed as an Original in each Appeal. The filing date in each Appeal is the same, and each Appeal is assigned to the same Judge of the District Court.

***The filing fee for this Appeal in Case No. 1:13-cv-01544-RLW was paid on October 22, 2013, through loans from friends***

## Statement of the Issues Presented

(a) Whether the Chapter 7 Trustee's Settlement is VOID, as procured by "fraud on the Court"?  *This Issue relates to Case No. 1:13-cv-01544-RLW*

(b) Whether the <u>Decision</u>, entered August 8, 2012, is VOID for lack of subject-matter jurisdiction and for "due process" violations by the Bankruptcy Court? *This Issue relates to Case No. 1:13-cv-01544-RLW*

(c) Whether the Bankruptcy Court acted contrary to <u>United States v. Kras</u>, 409 U.S. 434, 440 (1973) in denying the Applications for In Forma Pauperis status filed by the Debtor for Waiver of the Appeal filing fee? *This Issue relates to Case No. 1:13-cv-01546-RLW*

(d) Whether the Bankruptcy Court had jurisdiction to act upon the Applications for In Forma Pauperis status filed by the Debtor for Waiver of the Appeal filing fee? *This Issue relates to Case No. 1:13-cv-01546-RLW*

(e) Whether the Bankruptcy Court violated the "Due Process" rights of the Debtor by directing the Chapter 7 Trustee to <u>not</u> file responses to Motions by the Debtor, and thereby the Order Suspending Responses is VOID?  *This Issue relates to Case No. 1:13-cv-01545-RLW*

## Statement of Applicable Standard of Appellate Review

The required standard of review for questions of law in a Bankruptcy appeal is <u>de novo</u>. <u>In Re Capitol Hill Group</u>, 313 B.R. 344, 348-349 (D.D.C. 2004).   The Bankruptcy Court conducted <u>no</u> evidentiary hearing as to the applicability of Fed. R. Civ. P., Rule 60 (b)(3) and (4), and (d)(3), to the Chapter 7 Trustee's Settlement, or as to the applicability of 28 U.S.C. 1915 (a) to the filing fee for the Appeal, and thus has made <u>no</u> proper findings of fact.

The Bankruptcy Court engages in an "abuse of discretion" when it relies upon clearly erroneous facts, fails to consider a relevant factor, or applies the wrong legal standard.   <u>Hope 7 Monroe Street Ltd. Partnership v. Riaso</u>, 473 B.R. 1, 6-7 (D.D.C. 2012).

Statement of the Case

1. The Debtor filed on July 15, 2013, a Motion for Relief from Judgment Per FRCP Rule 60 (b)(3) and (4), and (d)(3), alleging the Chapter7 Trustee's Settlement was procured by "fraud on the Court," and the <u>Decision</u>, entered August 8, 2012, is VOID for lack of subject-matter jurisdiction and "due process" violations.  Docket Entry No. 666.

2. In <u>Memorandum Decision Re: Debtor's Motion for Relief from Judgment</u>, entered, August 8, 2013, the Bankruptcy Court denied the Motion.  Docket Entry No. 681.

3. The Debtor filed on August 22, 2013, a Motion to Vacate Decision Re: Relief from Judgment.  Docket Entry No. 693.

4. In <u>Memorandum Decision Re: Debtor's Motion to Vacate</u>, entered August 27, 2013, the Bankruptcy Court denied the Motion. Docket Entry No. 695.

5. The Debtor filed on September 3, 2013, a Motion to Vacate the Decision. Docket Entry No. 702.

6. In <u>Memorandum Decision</u>, entered September 4, 2013, the Bankruptcy Court denied the Motion. Docket Entry No. 703.

7. In <u>Order Suspending Response Deadlines</u>, entered September 6, 2013, the Bankruptcy Court <u>sua sponte</u> ruled that the Chapter 7 Trustee should <u>not</u> respond to any Motions by the Debtor unless directed to do so.  Docket Entry No. 706.

8. The Debtor filed on September 8, 2013, a Motion to Vacate Order Suspending Response Deadlines. Docket Entry No. 712.

9. In <u>Memorandum Decision and Order</u>, entered September 10, 2013, the Bankruptcy Court denied the Motion.  Docket Entry No. 713.

10. The Debtor filed on September 10, 2013, a Notice of Appeal. Docket Entry No. 715. This Notice of Appeal is for Docket Entries Nos. 681, 682, 695, 696, 703, and 704. This is the Appeal in Case No. 1:13-cv-01544.

11. The Debtor filed on September 10, 2013, an Application for Fee Waiver for the Notice of Appeal. Docket Entry No. 716.

12. The Debtor filed on September 10, 2013, an Amended Notice of Appeal. Docket Entry No. 718. This Amended Notice of Appeal is to include Docket Entries Nos. 713 and 714. This is the Appeal in Case No. 1:13-cv-01545.

13. In Memorandum Opinion and Order, entered September 13, 2013, the Application for Fee Waiver in Docket Entry No. 716 was denied by the Bankruptcy Court. Docket Entry No. 723. This is the Appeal in Case No. 1:13-cv-01546.

14. The Debtor filed on September 15, 2013, an Amended Notice of Appeal. Docket Entry No. 729. This Amended Notice of Appeal is to include Docket Entry No. 723.

15. The Debtor filed on September 15, 2013, a Corrected Notice of Appeal. Docket Entry No. 730. This Corrected Notice of Appeal is to include Docket Entries Nos. 713, 714, 715, 718, and 719.

16. The Debtor filed on September 15, 2013, an Application for Fee Waiver. Docket Entry No. 731.

17. The Debtor filed on September 15, 2013, a Notice of Appeal. Docket Entry No. 745. This Notice of Appeal is to include Docket Entries Nos. 681, 682, 695, 696, 715, 723, 724, and 729.

18.   In <u>Memorandum Decision and Order</u>, entered September 19, 2013, the Application for Fee Waiver in Docket No. 731 was denied by the Bankruptcy Court. Docket Entry No. 737.

19.   In <u>Memorandum Decisions</u>, entered September 24, 2013, the Bankruptcy Court gave its guidance on how the District Court should handle the Notices of Appeal.  Docket Entries Nos. 742, 743, and 744.

20.   The Debtor filed on October 3, 2013, an Amended Notice of Appeal.  Docket Entry No. 754. This Amended Notice of Appeal is to include Docket Entry No. 737.

21.   The Debtor filed on October 15, 2013, an Application for Fee Waiver in Docket Entry No. 777 for the Amended Notice of Appeal in Docket Entry No. 754.

<div align="center">Statement of the Facts</div>

22.   The Bankruptcy Court, in <u>Order</u>, entered December 30, 2009, determined that it would "abstain" in favor of the D.C. Superior Court and the D.C. Court of Appeals from making any determination of the marital property interests of Yelverton and his spouse, Alexandra Senyi de Nagy-Unyom.  This "abstention" by the Bankruptcy Court was reaffirmed in <u>Decision</u>, at pp. 4-5, and 16, entered February 4, 2010, in Adversary Proceeding No. 09-10048.  These rulings have <u>never</u> been rescinded.

23. The U.S. Trustee for the Fourth and D.C. Circuit, Clark McDow, filed on July 6, 2010, in Docket Entry No. 298, a Motion to Involuntarily Convert the Chapter 11 Bankruptcy of Yelverton to Chapter 7.  See, Ex. 1, attached hereto.  McDow, as the U.S. Trustee, is a "political" appointee located in South Carolina and had been serving since about 1992.  U.S. Senators Strom Thurmond (R-SC) and Jesse Helms (R-NC) were at that time reputed to control all Federal appointments in the Fourth Circuit.

24. In his Motion to Involuntarily Convert the Chapter 11 Bankruptcy of Yelverton to Chapter 7, the U.S. Trustee, McDow, acknowledged that it was for the benefit of Deborah Marm, although she is <u>not</u> a Creditor of Yelverton, and is <u>not</u> a party to the Bankruptcy of Yelverton.

25. Marm is a former high ranking staff official with U.S. Senator Jesse Helms (R-NC), and is currently a high ranking staff official with U.S. Congressman Walter B. Jones, Jr. (R-NC).

26. Marm is a Defendant in a Federal lawsuit by Yelverton in the Eastern District of North Carolina, which was commenced on July 29, 2009, where he made claims of up to $3 Million against her for unlawful "conversion" of his property in North Carolina and for tortious interference with his business relations in North Carolina. Yelverton filed this lawsuit against Marm to recover his property from her to be able to pay his Creditors in the Bankruptcy of up to some $2 Million. Marm has <u>no</u> Affirmative Defenses.

27. In the Motion to Involuntarily Convert the Chapter 11 Bankruptcy of Yelverton to Chapter 7, the U.S. Trustee in South Carolina, McDow, stated that it was improper for Yelverton as the Debtor to sue his siblings, and thus a Chapter 7 Trustee must be appointed to take over the pending litigation against Marm and to settle the claims.

28. There is <u>no</u> basis in Bankruptcy law for a case to be involuntarily converted to Chapter 7, as demanded by the U.S. Trustee in South Carolina, McDow. Although the case was converted on a different basis, McDow did candidly admit to his actual reasons for demanding that Yelverton be removed as the Chapter 11 Trustee and removed as the Plaintiff in his litigation claims of $3 Million against Marm --- which was the appointment of a Chapter 7 Trustee to settle the claims of Yelverton against Marm.

29. Marm retained the law firm of Womble Carlyle to represent her in the Bankruptcy of Yelverton. The Chief Lobbyist for Womble Carlyle is Jimmy Broughton, a non-lawyer, who was formerly the Chief of Staff for Senator Helms.

30. The law firm website for Womble Carlyle touts Broughton as having been personally involved in all the political and judicial appointments in the Fourth Circuit in which Senator Helms was involved.

31. The U.S. Trustee in South Carolina, McDow, personally appointed in September 2010 the Chapter 7 Trustee for Yelverton's Bankruptcy. This Chapter 7 Trustee, Wendell W. Webster, has admitted that he is a "close personal friend" with Marm's Bankruptcy counsel at Womble Carlyle, who is Jeffrey Tarkenton. However, Webster has refused to Recuse himself as Chapter 7 Trustee.

32. Although Yelverton has up to $3 Million in litigation claims against Marm, Webster suggested to the Bankruptcy Court that Yelverton has a "no asset" case. In December 2010, Webster allowed a Discharge of over $1 Million in unsecured Debts of Yelverton, without ever taking an inventory of Yelverton's assets in the possession of Marm, or conducting an independent appraisal of Yelverton's assets in her possession.

33. Some of the unsecured Debt which Webster allowed to be Discharged was owed to Tarkenton's client, JPMorgan Chase, in another case of his against Yelverton. The Discharge of Yelverton's unsecured Debt to JPMorgan Chase inured to the benefit of Marm because it would not be required to be paid by her in a Settlement with Webster.

34. Marm repeatedly misrepresented to the Bankruptcy Court that Yelverton is not the owner of the assets in her possession in North Carolina, and falsely asserted that Wade H. Atkinson, Jr., is the owner, and the assets should not be in the Debtor Estate.

35.   Marm made to the Bankruptcy Court, through her counsel Tarkenton, knowingly false representations of ownership of the assets by Atkinson, which were in Docket Entry No. 337, pp. 1-6, entered September 15, 2010; and in Adversary Proceeding No. 10-10003, in Docket Entry No. 13, pp. 1-4, entered May 10, 2010; Docket Entry No. 24, pp. 1-4, entered June 18, 2010; Docket Entry No. 36, pp. 1-5, entered August 9, 2010; and Docket Entry No. 45, pp. 1-3, entered September 15, 2010.

36. The ownership of the assets by Yelverton is confirmed by Federal corporate tax returns for 2009-2010 that Marm caused to be filed with IRS and swore to their accuracy.

37. On July 12, 2013, Atkinson executed an Affidavit affirming he was never the owner of the assets in North Carolina, and moreover that he had never been informed by Marm or her counsel that she was claiming Atkinson to be the owner.  Atkinson does have a perfected U.C.C. lien on these assets.   See, Exhibit 3, attached hereto.

38. The intent of this charade by Marm that Atkinson is the owner of the assets was to manipulate Webster, the Chapter 7 Trustee, to give her these assets at a nominal price on the pretense that with "disputed" ownership the assets would have only nominal value.

39. Webster "negotiated" the Settlement with his "close personal friend," Tarkenton, and Webster never questioned the false representations of Marm that Atkinson is the supposed owner of the assets, and never demanded from Marm and Tarkenton any proof of ownership of the assets by Atkinson. The Settlement was executed March 25, 2012.

40. This Settlement, which Webster "negotiated" with his "close personal friend," Tarkenton, on behalf of Marm, is premised on a certain Lease of land to Yelverton Farms, Ltd., not being renewed, and thus its stock would have no value in the Settlement. This stock and related litigation claims are the primary assets included in the Settlement.

41.  At the Hearing on June 18, 2012, Webster represented to the Bankruptcy Court that the owner of the land, Phyllis Edmundson, a co-Defendant with Marm, had decided not to renew, after December 31, 2013, the Lease of land to Yelverton Farms, Ltd., where she is an officer, and thus its stock would have no value in the Settlement.

42.  The Bankruptcy Court accepted this representation by Webster, as the Chapter 7 Trustee, at face value on the basis that an owner of land has the right to do whatever they wanted, even if it destroys the value of the corporate stock included in the Debtor Estate.

43.  Webster failed to disclose to the Bankruptcy Court an e-mail from him, dated May 1, 2011, prior to execution of the Settlement, where he stated:

Why don't I ask the family (Edmundson/Marm) to agree that the pig farm Lease will not be renewed as part of the Settlement...."  See, Ex. 2, attached hereto.

44.  This e-mail from Webster was first produced in Discovery on August 27, 2013, and thus is evidence not available at the Hearing on June 18, 2012.

45.  In the Settlement, which has not been consummated, Webster would assign to Marm the assets of Yelverton in North Carolina, and dismiss with prejudice the litigation claims of Yelverton against Marm, with a value of up to $3 Million in return for a total payment to Webster of $110,000.  Marm is not a Creditor of Yelverton.

46.  The Settlement amount of $110,000, was agreed to by Webster and Tarkenton on the basis that Atkinson is the owner of the assets, and not Yelverton, and in any event the assets would have no value because of non-renewal of the Lease of land to Yelverton Farms, Ltd., which would destroy the value of its stock and the litigation claims.

47.  There would be no payments from the Settlement proceeds to any Creditors, and all proceeds would be paid to the Chapter 7 Trustee for his legal fees and administrative fees.  Yelverton would receive nothing to pay his Non-Discharged debts.

48. Yelverton has at least $400,000, plus $17,000 per month, in Non-Discharged Debt, with no means to make such payments.  Webster has stripped him of all his assets.

49.  Only Webster as the Chapter 7 Trustee, and Marm and her co-Defendants, as non-Creditors, would financially benefit from the Settlement, who the Trustee owes no fiduciary duties.  The agenda of the "politically" appointed U.S. Trustee in South Carolina, McDow, to protect Marm from the litigation claims of Yelverton, where she has no Affirmative Defenses, as indicated in the Motion to Involuntarily Convert, filed July 6, 2010, in Docket Entry No. 298, has been implemented by Webster, his personally appointed Chapter 7 Trustee, to the detriment of the Creditors of the Debtor Estate, who would receive nothing from the Settlement, but who the Trustee owes fiduciary duties to maximize the value of assets in the Debtor Estate.  See, Ex. 1, attached hereto.

50. The Settlement was affirmed by the Bankruptcy court in Decision, entered August 8, 2012.  However, it is entirely based upon assertions of fact that were not subject to cross-examination at a Hearing, and relied upon privileged marital communications, at pp. 19-20, which are not competent evidence, and thus not admissible under D.C. Code, Section 14-306 (b).

51. The Decision moreover did not rely upon either District of Columbia or North Carolina law as to the marital property of Yelverton, but instead alluded to the law of other jurisdictions with no connection to the property of Yelverton.

52.  In Order Suspending Response Deadlines, entered September 6, 2013, the Bankruptcy Court thwarted the Debtor from exercising his Article III right to challenge the Chapter 7 Trustee's Settlement.  The sole basis for the Order is the unsupported assertion the Debtor had previously filed "frivolous" Motions challenging the Settlement.

14

## Summary of Arguments

53. The Chapter 7 Trustee's Settlement is VOID, under Fed. R. Civ. P., Rule 60 (d)(3), as being procured by "fraud on the Bankruptcy Court." Webster as the Trustee and as an Officer of the Court, acted in a "dishonest" manner by encouraging Edmundson and Marm to not renew their Lease of land to Yelverton Farms, Ltd., which is essential to its operations, and thus would destroy the value of the corporation and its stock, and thereby allow Edmundson and Marm to acquire in the Settlement the stock from the Debtor Estate, with only a nominal payment to Webster as the Trustee. The participation of Webster in this "unconscionable scheme" to defraud Creditors, where he as the Trustee owes them fiduciary duties, but owes no such fiduciary duties to Edmundson and Marm, was not disclosed to the Bankruptcy Court, which is a "fraud on the Court."

54. Marm, through her counsel, Tarkenton, as an Officer of the Court, committed a "fraud the Bankruptcy Court" by both of them knowingly and falsely representing in Court filings that Atkinson is the owner of the assets in the Debtor Estate, and not Yelverton. The intent of this "unconscionable scheme" was to create the illusion of an ownership dispute, and thereby allow Webster to assign the assets to Marm in the Settlement at a nominal price on the fictitious basis that Yelverton may not be the owner.

55. Webster is a "close personal friend" with Tarkenton, and they acted in "collusion" as Officers of the Court to financially benefit Marm by defrauding Creditors, including a client of Tarkenton, JPMorgan Chase, in another case against Yelverton.

56. The Settlement itself is a "fraud" on the Creditors. Marm, a non-Creditor, would obtain assets from the Debtor Estate with a value up to $3 Million by payment to Webster of $110,000, to cover his legal fees, with nothing to any Creditors.

57. The Decision, entered August 8, 2012, is VOID as a legal nullity, under Fed. R. Civ. P., Rule 60 (b)(4).  It ruled on the marital property interests of Yelverton, although the Bankruptcy Court had "abstained" in 2009-2010 from this subject-matter in favor of the D.C. Superior Court and the D.C. Court of Appeals ruling on these matters.

58. The Decision, entered August 8, 2012, is VOID as a legal nullity, under Fed. R. Civ. P., Rule (b)(4), because it violated the "due process" rights of Yelverton.  He had no "opportunity to be heard" as to matters ruled on in the Decision, where there was no cross-examination and no prior notice that the matters would be ruled upon by the Bankruptcy Court.  It moreover relied upon privileged marital communications that are not admissible under D.C. Code, Section 14-306 (b).

.    59. The Bankruptcy Court acted contrary to United States v. Kras, 409 U.S. 434, 440 (1973), in denying the Applications for In Forma Pauperis status filed by the Debtor for Waiver of the Appeal filing fees.  The provisions of 28 U.S.C. 1915 (a) are not allowed to be used in Bankruptcy cases.

60. The Bankruptcy Court ignored established precedent in the D.C Circuit that a filing is "frivolous" only if there is "indisputably absent any factual and legal basis for the asserted wrong." Sills v. Bureau of Prisons, 761 F.2d 792, 794 (D.C. Cir. 1985).

61. The Bankruptcy Court has no jurisdiction to act upon the Applications for Appeal Fee Waivers after the Notice of Appeal is filed. Only the District Court may act.

62. The Bankruptcy Court violated the Article III and "due process" rights of the Debtor by directing the Chapter 7 Trustee not to file responses to the Debtor's Motions. The Order Suspending Response Deadlines, entered September 6, 2013, is thus VOID.

Arguments

(a) The Chapter 7 Trustee's Settlement is VOID as being procured by "fraud on the Bankruptcy Court."  *This Issue relates to Case No. 1:13-cv-01544-RLW*

63.  The Chapter 7 Trustee's Settlement with Marm is VOID as being procured by "fraud on the Bankruptcy Court."

(1)  Applicable Law under Fed. R. Civ. P., Rule 60 (d)(3)

64.  Where an attorney, as an Officer of the Court, acts in a "dishonest" manner, which may include breaching his fiduciary duties through "collusion" with an opposing attorney, he engages in a "fraud on the Court," and where there is no time limit in reopening a Judgment. Moore's Federal Practice, Section 60.33, at p. 359 (2nd Ed. 1985). See also, Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 245-246 (1944); Baltia Airlines, Inc. v. Transaction Mgmt., Inc., 98 F.3d 640, 642-643 (D.C. Cir. 1996); Bowie v. Maddox, 677 F.Supp.2d 276, 278-279 (D.D.C. 2010), "fraud on the Court" is a "fraud perpetrated by Officers of the Court [attorneys] so that the judicial machinery cannot operate in the usual manner of its impartial task."

65.  The Movant must have a "full and fair opportunity" to present his case, but was prevented from doing so by a "fraud on the Court." Summers v. Howard University, 374 F.3d 1188, 1193 (D.C. Cir. 2004).

66.  Where a Settlement is procured by "fraud." it is VOID.  Corpus Juris Secundum, Section 11, p. 732; Restatement (Second) Judgments, Section 26, cmt j.

67.  Under Fed. R. Civ. P., Rule 60, it is not required that the moving party show a likelihood of success on the merits, but only that there is "reason to believe that [acting on the motion under Rule 60] would not be an empty exercise or futile gesture." Murray v. District of Columbia, 52 F.3d 353, 355 (D.C. Cir. 1995).

17

68. The factual claims of a Movant must be accepted as true, and all inferences drawn in favor of the Movant and against the non-moving party, and the Court must <u>not</u> make any determination of the Movant's probability of success, even if it appears unlikely. <u>Owens v. District of Columbia</u>, 631 F.Supp.2d 48, 53 (D.D.C. 2009); <u>Johnson v. District of Columbia</u>, 572 F.Supp.2d 94, 101 (D.D.C. 2008); <u>Cook v. Boorstin</u>, 763 F.2d 1462, 1468 (D.C. Cir. 1985).

(2) <u>The Chapter 7 Trustee Committed a Fraud on the Bankruptcy Court</u>

69. The Chapter 7 Trustee, Webster, committed a "fraud on the Bankruptcy Court" by <u>not</u> disclosing to the Court that he had encouraged Edmundson and Marm <u>not</u> to renew the Lease of land to Yelverton Farms, Ltd.  See, e-mail, dated May 1, 2011, and attached as Ex. 2, hereto.  The non-renewal of the Lease would result in the corporation <u>not</u> being able to operate, and the stock having <u>no</u> value.  This stock and related litigation claims against Marm are the primary assets in the Debtor Estate to be assigned to her by Webster in the Settlement at a nominal price based upon non-renewal of the Lease.

70. The Chapter 7 Trustee has <u>no</u> fiduciary obligations to Marm, as a <u>non-</u>Creditor, but does have fiduciary obligations to the Creditors to <u>maximize</u> the value of the Debtor Estate in order to pay their claims. <u>Freeman v. Seligson</u>, 405 F.2d 1326, 1333 (D.C. Cir. 1968); <u>C.F.T.C. v. Weintraub</u>, 471 U.S. 343, 352 (1984).

71. Webster, as Chapter 7 Trustee, acted to <u>minimize</u> the value of the Debtor Estate by encouraging destruction of the value of the stock in Yelverton Farms, Ltd., through the non-renewal of the Lease of land upon which it operates.  Thus, Webster breached his fiduciary obligations to the Creditors by acting <u>against</u> their interests and by acting in favor of the interests of Marm for her to take assets of the Debtor Estate at nominal cost.

72. In acting in the Settlement against the interests of the Creditors, Webster acted in "collusion" with his "close personal friend," Tarkenton, who is counsel for Marm in the Settlement and an opposing party. This undisclosed "collusion" between Webster and Tarkenton prevented Yelverton from "fairly and fully presenting his case" because Webster was presumed to be an adversary to Tarkenton.

73. It is improper and a breach of fiduciary duties for a Chapter 7 Trustee to liquidate claims that benefit only select persons to the detriment of all Creditors as a class, and which only benefits the Estate by the recoupment of the Trustee's administrative expenses. In Re Covington, 368 B.R. 38, 41-42 (Bkrtcy. E.D. Cal. 2006).

74. The Chapter 7 Trustee is required to administer the Debtor Estate only for the benefit of Creditors, and therefore may not administer it for the benefit of non-Creditors. In Re Ross, 475 B.R. 279, 282 (D.D.C. 2012).

75. Thus, this matter must be Remanded to the Bankruptcy court, under Fed. R. Civ. P., Rule 60 (d)(3), for Discovery and an evidentiary Hearing as to the circumstances of Webster being appointed Chapter 7 Trustee by the U.S. Trustee in South Carolina, McDow, the personal friendship between Webster and Tarkenton, and the actions of Webster to minimize the value of the assets in the Debtor Estate to the detriment of Creditors and for the financial benefit of Marm, a non-Creditor, through "collusion" with his "close personal friend," Tarkenton, who is counsel for Marm. Moore's Federal Practice, Section 60.33, id.; Hazel-Atlas, id.; Baltia, id.; and Bowie, id.

76. When an attorney, as an Officer of the Court, departs from "honest dealing" with the Court to engage in an "unconscionable scheme," he commits a "fraud on the Court." Lockwood v. Bowles, 46 F.R.D. 625, 631-632, n. 31 (D.D.C. 1969).

19

(3)  <u>Marm committed a Fraud on the Bankruptcy Court through her Counsel</u>

77.  Marm committed a "fraud on the Bankruptcy Court" through her counsel, Tarkenton, by <u>falsely</u> representing to the Bankruptcy Court that Yelverton is <u>not</u> the owner of the assets in the Debtor Estate, but that Atkinson is the owner.

78.  The intent of this charade by Marm, through her counsel Tarkenton, was to create the illusion of "disputed" ownership, and thus provide a rationale for the Chapter 7 Trustee to deeply discount the value of the assets in the Debtor Estate in order for Marm to obtain these assets from Webster in the Settlement at a nominal price.

79.  Marm and her counsel, Tarkenton, knew that Atkinson was <u>not</u> and had <u>never</u> been the owner of any of the assets in the Debtor Estate.  This is demonstrated by the 2009-2010 Federal tax returns for Yelverton Farms, Ltd., showing Yelverton to be the owner of the stock, which Marm caused to be prepared, and where she had sworn to their accuracy.  These tax returns were in the possession of Tarkenton, as Marm's counsel.

80.  If Marm had any legitimate belief that Atkinson is the owner of the assets that she wanted to acquire from Webster, as the Chapter 7 Trustee, she would have contacted Atkinson for him to validate the claims that she was supposedly making on his behalf.

81.  However, in an Affidavit, executed July 12, 2013, Atkinson affirms that he was <u>never</u> the owner of the assets in the Debtor Estate, and affirms that Marm and her counsel <u>never</u> informed him that they were making any claims of ownership on his behalf.  See, Ex. 3, attached hereto.

82.  Thus, with Marm and her counsel <u>never</u> contacting Atkinson, it is conclusive that Marm and her counsel, Tarkenton, were making a <u>knowingly</u> fraudulent claim to the Bankruptcy Court for the financial benefit of Marm, and <u>not</u> for the benefit of Atkinson.

83. This <u>knowingly</u> fraudulent claim by Marm and her counsel, Tarkenton, prevented Yelverton from "fairly and fully making his case" that he was the undisputed owner of the assets in the Debtor Estate.

84. Thus, this matter must be Remanded to the Bankruptcy court, under Fed. R. Civ. P., Rule 60 (d)(3), for Discovery and an evidentiary Hearing as to circumstances of the knowingly <u>false</u> claims made by Marm and her counsel, Tarkenton, to the Bankruptcy Court that Atkinson is the owner of the assets in the Debtor Estate, and <u>not</u> Yelverton.

85. Marm and her counsel, Tarkenton, carried out an "unconscionable scheme" that was designed to improperly influence the Bankruptcy Court in its decision to approve the Settlement, which is to convey to Marm the assets of Yelverton, based upon a <u>fictitious</u> dispute that Atkinson is the owner, and thus the price would be discounted and nominal. <u>Hazel-Atlas</u>, <u>id.</u>; <u>Baltia</u>, <u>id.</u>; <u>Bowie</u>, <u>id.</u>; <u>Lockwood</u>, <u>id.</u>

(b) <u>The Decision entered August 8, 2012, is VOID for lack of subject-matter jurisdiction and for "due process" violations by the Bankruptcy Court</u>

86. The <u>Decision</u>, entered August 8, 2012, which made rulings as to the marital property of Yelverton, and which affirmed the Settlement, is VOID under Fed. R. Civ. P., Rule 60 (b)(4), for lack of subject-matter jurisdiction and for "due process" violations by the Bankruptcy Court.  *This Issue relates to Case No. 1:13-cv-1544-RLW.*

(1) <u>The Applicable Law under Fed. R. Civ. P., Rule 60 (b)(4)</u>

87. A Judgment, Order, or proceeding is VOID as a legal nullity, where it is premised upon a lack of jurisdiction, or upon a "due process" violation which deprives a party of the "opportunity to be heard." <u>United Student Aid, Inc. v. Espinosa</u>, 130 S.Ct. 1367, 1377 (2010). See, Fed. R. Civ. P., Rule 60 (b)(4).

88. A Judgment, Order, or proceeding is VOID as a legal nullity "if the Court that rendered it acted in a manner inconsistent with 'due process' of law under the Fifth Amendment." Trupei v. U.S., 274 F.R.D. 38, 40 (D.D.C. 2011).

89. A Judgment, Order, or proceeding may be VOID as a legal nullity "if the Court lacked subject-matter jurisdiction, acted in a manner inconsistent with 'due process,' or proceeded beyond the powers granted it by law." Green v. American Federation of Labor, 811 F.Supp.2d 250, 253 (D.D.C. 2011).

90. A "meritorious defense is not necessary where the Movant proves a Judgment to be VOID as a legal nullity under Rule 60 (b)(4)," and the Movant "need not show a likelihood of success on the merits, but rather needs to provide the Trial Court with reason to believe that Vacating the Judgment will not be an empty exercise or futile gesture." Murray, id., at 355.

91. A Motion under Rule 60 (b)(4) is not subject to the one-year limitation under Rule 60 (c)(1). Trupei, id.

### (2) The Decision, entered August 8, 2012 is VOID for Lack of Subject-Matter Jurisdiction

92. The Decision, entered August 8, 2012, is VOID as a legal nullity for lack of subject-matter jurisdiction. It purports to make rulings as to the marital property interests of Yelverton. However, in Order, entered December 30, 2009, the Bankruptcy Court determined that it would "abstain" from ruling on Yelverton's marital property interests, and defer to the D.C. Superior Court and the D.C. Court of Appeals. This "abstention" by the Bankruptcy Court was affirmed in Decision, at pp. 4-5, and 16, entered on February 4, 2010, in Adversary Proceeding No. 09-10048. It has not been rescinded.

93.   Thus, the <u>Decision</u>, entered August 8, 2012, is VOID as a legal nullity. <u>Espinosa</u>, <u>id</u>.; <u>Green</u>, <u>id</u>.  Because it affirmed the Settlement approved on June 19, 2012, the Settlement would also be VOID as a legal nullity.    A Judgment <u>cannot</u> stand on another Judgment which is VOID as a legal nullity.

(3) <u>The Decision, entered August 8, 2012, is VOID for "Due Process" Violations</u>

94. The <u>Decision</u>, entered August 8, 2012, is VOID for "due process" violations by the Bankruptcy Court.  It is based upon factual assertions that were <u>not</u> subject to cross-examination, and where there was <u>no</u> prior notice that such matters would be ruled upon, which included privileged marital communications that are <u>not</u> competent evidence and <u>not</u> admissible under D.C. Code, Section 14-306 (b).

95.   Thus, Yelverton was denied the "opportunity to be heard" as to matters ruled upon in the <u>Decision</u>, entered August 8, 2012, and thereby his "due process" rights were violated by the Bankruptcy Court.   <u>Espinosa</u>, <u>id</u>.; <u>Green</u>, <u>id</u>., <u>Trupei</u>, <u>id</u>., <u>Murray</u>, <u>id</u>. This requires a Remand to the Bankruptcy Court to correct its errors in the VOID <u>Decision</u>, entered August 8, 2012.

(c) <u>The Bankruptcy Court acted contrary to United States v. Kras,</u>
<u>409 U.S. 434, 440 (1973) in denying the Application for In Forma Pauperis status</u>
<u>filed by the Debtor for Waiver of the Appeal filing fee</u>

96.   In <u>Memorandum Decision and Order</u>, entered September 13, and on September 19, 2013, the Bankruptcy Court erroneously denied the Debtor's applications for In Forma Pauperis status for waiver of the Appeal filing fee.  It improperly relied upon 28 U.S.C. 1915 (a).  *This Issue relates to Case No. 1:13-cv-01546.*

97. The provisions of 28 U.S.C. 1915 (a) may <u>not</u> be used in Bankruptcy cases. <u>United States v. Kras</u>, 409 U.S. 434, 440 (1973).

98. The Bankruptcy Court <u>failed</u> to properly render a decision under 28 U.S.C. 1930 (f) based <u>only</u> upon the financial circumstances of the Debtor, where the Chapter 7 Trustee has taken all of Yelverton's assets to be given away at nominal cost to <u>non</u>-Creditors, and where in doing so the Trustee has denied him his right to a "fresh start" after Bankruptcy. <u>In Re Jackson</u>, 593 F.3d 171, 177 (2nd Cir. 2010).

99. Yelverton agrees for the filing fee for his Appeals to be a Non-Discharged administrative cost to be paid to the Clerk from Abandoned or Exempted property of the Debtor Estate, whenever received, and as a personal liability of the Debtor.

100. The assertion of the Bankruptcy Court that Yelverton's Appeals are somehow "frivolous" is <u>not</u> based upon any factual or legal analysis whatsoever, as required by <u>In Re Powell</u>, 851 F.2d 427, 431, and n. 14 (D.C. Cir. 1988).

101. To be determined "frivolous," the pleading must have <u>no</u> facts and <u>no</u> law in support, which must be demonstrated by the Court with "substantive" factual and legal analysis, and <u>not</u> render cursory speculation in only <u>disagreeing</u> with the arguments. <u>In Re Delaney</u>, 819 A.2d 968, 999 (D.C. 2003); <u>Sills v. Bureau of Prisons</u>, 761 F.2d 792, 794-795 (D.C. Cir. 1985); and <u>Nitzke v. Williams</u>, 490 U.S. 319, 325 (1989).

102. The D.C. Circuit has clearly defined the "narrow" class of cases which may be deemed "frivolous," which are <u>only</u> those where there is "indisputably <u>absent</u> any factual and legal basis for the asserted wrong." <u>Sills, id.</u>, at 794.

103. The Appeals by Yelverton are meritorious as a matter of law as based upon substantive facts and law. <u>Ginsberg v. Granados</u>, 963 A.2d 1134, 1139 (D.C. 2009), assertions of claims are <u>not</u> "frivolous," where they have <u>some</u> factual and legal support and are colorable, even though they may not succeed.

104. The Bankruptcy Court has simply failed to demonstrate its rulings. <u>Speleos v. McCarthy</u>, 201 B.R. 325, 330 (D.D.C. 1996); <u>Rogers v. Johnson-Norman</u>, 514 F.Supp.2d 50 (D.D.C. 2007), because of the "Constitutional dimensions of the interests at stake, the Trial Court must make substantive findings," and an "Order enjoining a litigant is an extreme remedy which should be used only in exigent circumstances."

(d) <u>The Bankruptcy Court has No Jurisdiction to act on Appeal Fee Waivers</u>

105.   Once a Notice of Appeal is filed, under 28 U.S.C. 158 (a), the Bankruptcy Court <u>no</u> longer has jurisdiction over the case, and thus may <u>not</u> act upon an Application for an Appeal Fee Waiver filed concurrent with the Appeal.   *This Issue relates to Case No. 1:13-cv-01546.*

106. With <u>no</u> jurisdiction, the rulings of the Bankruptcy Court in denying the Applications for an Appeal Fee Waiver are VOID as a legal nullity. <u>Espinosa</u>, <u>id</u>; <u>Green</u>, <u>id</u>. Thus, the District Court must act upon the Applications for an Appeal Fee Waiver with <u>no</u> regard to the VOID rulings of the Bankruptcy Court.

(e) <u>The Bankruptcy Court violated the Due Process rights of the Debtor by directing the Chapter 7 Trustee to not file responses to Motions by the Debtor.</u>

107. The <u>Order Suspending Response Deadlines</u>, entered September 6, 2013, violates the "due process" rights of the Debtor by unduly inhibiting his rights under Article III.   It asserts with <u>no</u> support that the Debtor had made supposed "frivolous" filings against the Chapter 7 Trustee's Settlement.   *This Issue relates to Case No. 1:13-cv-01545-RLW*

108.   However, the Bankruptcy Court must first make "substantive" findings that "frivolous" filings have been made, which it <u>failed</u> to do.   <u>In Re Powell</u>, <u>id</u>.; <u>In Re Speleos</u>, <u>id</u>.

109. The policy of the D.C. Circuit is to at least require some responsive answer from the Defendant before the dismissal of a Complaint or Motion. Sills, id., at 794.

110. Thus, the Order Suspending Response Deadlines is VOID as a legal nullity because Yelverton had no "opportunity to be heard" as to his previous filings being somehow "frivolous," and thereby his "due process" rights were violated by the Bankruptcy Court. Espinosa, id.

<center>Conclusions</center>

WHEREFORE, in view of the forgoing, this Appeal must be consolidated with the review of the Settlement, which has been Remanded to the District Court, where both raise the same ultimate issues that the Chapter 7 Trustee's Settlement with Marm is a "fraud on Creditors" and is a "fraud on the Bankruptcy Court."

*The filing fee for the Appeal in Case No. 1:13-cv-01544-RLW was paid on October 22, 2013*

This the 22nd day of October, 2013.

Respectfully submitted,

Stephen Thomas Yelverton, Pro Se,
601 Pennsylvania Ave, N.W., Suite 900 South
Washington, D.C. 20004
Tel. 202-702-6708
Fax 202-403-3801
styelv@aol.com

<center>26</center>

ADDENDUM

RELEVANT STATUTES

D.C. Code, Section 14-360 (b)

**FOCUS™** Terms                Search Within  Original Results (1 - 1)        **Go**  Advanced...

                                                                    View Tutorial

View Full                             1 of 1
                                  Book Browse
                      **D.C. Code § 14-306**  (Copy w/ Cite)                Pages: 4

*D.C. Code § 14-306*

DISTRICT OF COLUMBIA OFFICIAL CODE
Copyright 2013 by the District of Columbia

\*\*\* Current through September 18, 2013, and through D.C. Act 19-682 \*\*\*

DIVISION II.  JUDICIARY AND JUDICIAL PROCEDURE
TITLE 14.  PROOF
CHAPTER 3.  COMPETENCY OF WITNESSES

D.C. Code § 14-306  (2013)

§ 14-306. Spouse or domestic partner

(a) In civil and criminal proceedings, a spouse or domestic partner is competent but not compellable to testify for or against their spouse or domestic partner.

(b) In civil and criminal proceedings, a spouse or domestic partner is not competent to testify as to any confidential communications made by one to the other during the marriage or the domestic partnership.

(b-1) Notwithstanding subsections (a) and (b) of this section, a spouse or domestic partner is both competent and compellable to testify against his or her spouse or domestic partner as to both confidential communications made by one to the other during the marriage or domestic partnership and any other matter in:

(1) A criminal or delinquency proceeding where one spouse or domestic partner is charged with committing:

(A) Intimate partner violence as defined in § 16-1001(7) if the spouse or domestic partner has previously refused to testify in a criminal or delinquency proceeding against the same spouse or domestic partner for an offense against him or her; or

(B) An offense against a child, minor, or vulnerable adult who is:

(i) In the custody of or resides temporarily or permanently in the household of one of the spouses or domestic partners; or

(ii) Related by blood, marriage, domestic partnership, or adoption to one of the spouses or domestic partners;

(2) A civil proceeding involving the abuse, neglect, abandonment, custody, or dependency of a child, minor, or vulnerable adult who is:

(A) In the custody of or resides temporarily or permanently in the household of one of the spouses or domestic partners; or

(B) Related by blood, marriage, domestic partnership, or adoption to one of the spouses or domestic partners; or

(3) A criminal or delinquency proceeding where one spouse or domestic partner is charged with committing a crime jointly with the other spouse or domestic partner.

(b-2) Notwithstanding subsections (a) and (b) of this section, when one spouse or domestic partner is charged with committing a crime that occurred prior to the marriage of the spouses or prior to the filing of a domestic partnership agreement, the other spouse or domestic partner is both competent and compellable to testify against his or her spouse or domestic partner as to the crime, communications made by one to the other, and any other matter that occurred prior to the marriage of the spouses, or prior to the filing of the domestic partnership agreement.

(b-3) The burden is upon the person asserting a privilege under this section to establish that it exists.

(c) For the purposes of this section, the term:

(1) "Domestic partner" shall have the same meaning as provided in § 32-701(3).

(2) "Domestic partnership" shall have the same meaning as provided in § 32-701(4).

(3) "Refused to testify" means that the witness spouse or domestic partner has:

(A) Submitted an affidavit or other writing stating that she or he will not testify before a grand jury or in court;

(B) Taken the stand in the grand jury or in any court proceeding and asserted his or her privilege under this section not to testify; or

(C) Intentionally failed to appear in response to a subpoena.

HISTORY: Dec. 23, 1963, 77 Stat. 519, Pub. L. 88-241, § 1; Apr. 4, 2006, D.C. Law 16-79, § 2(b), 53 DCR 1035; Dec. 10, 2009, D.C. Law 18-88, § 206, 56 DCR 7413.

NOTES:
CROSS REFERENCES. --Family division proceedings, privilege under this section, see § 16-2359.
   Neglected children proceedings, waiver of privilege, see § 4-1321.05.

SECTION REFERENCES. --This section is referenced in § 4-1321.05, § 16-1005, § 16-2359, and § 16-2388.

PRIOR CODIFICATIONS. --1981 Ed., § 14-306.
   1973 Ed., § 14-306.

EFFECT OF AMENDMENTS. --D.C. Law 16-79 rewrote the section.
   D.C. Law 18-88 added subsecs. (b-1), (b-2), (b-3), and (c)(3).

EMERGENCY LEGISLATION. --For temporary (90 day) amendment of section, see § 206 of Omnibus Public Safety and Justice Emergency Amendment Act of 2009 (D.C. Act 18-181, August 6, 2009, 56 DCR 6903).
   For temporary (90 day) amendment of section, see § 206 of Omnibus Public Safety and Justice Congressional Review Emergency Amendment Act of 2009 (D.C. Act 18-227, October 21, 2009, 56 DCR 8668).

LEGISLATIVE HISTORY OF LAW 16-79. --Law 16-79, the "Domestic Partnership Equality Amendment Act of 2006", was introduced in Council and assigned Bill No. 16-52 which was referred to the Committee on Judiciary. The Bill was adopted on first and second readings on December 6, 2005, and January 4, 2006, respectively. Signed by the Mayor on January 26, 2006,

EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

In re:

STEPHEN THOMAS YELVERTON,

        Debtor.

Case No. 09-00414
Chapter 11

## MOTION OF UNITED STATES TRUSTEE TO CONVERT CASE TO CHAPTER 7

    The United States Trustee represents that:

    1.    The debtor commenced this case by filing a voluntary petition under Chapter 11 on May 14, 2009.

    2.    Debtor is an attorney who is proceeding pro se.

    3.    The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §157 and 28 U.S.C. § 1334.

    4.    The United States Trustee files this motion in furtherance of his duties and responsibilities pursuant to 28 U.S.C. § 586 and 11 U.S.C. §§ 307, 1112.

    5.    At the time of the bankruptcy filing, debtor had no real tangible assets, except for certain claims and interests which he was interested in pursuing and/or liquidating.

    6.    Over the course of the past year the debtor has diligently filed a number of actions seeking to recover assets and/or limit his liabilities.

    7.    Debtor has also proposed various disclosure statements and plans, and has worked cooperatively with the United States Trustee to try and narrow the areas of concern.

    8.    In very general terms, debtor has proposed to repay creditors from two sources:

asset recoveries and future revenues. It is becoming increasingly apparent from the debtor's monthly operating reports, that the most realistic source of funds, if any, will be from asset recovery.

9.     In terms of asset recoveries there appear to be only two potential assets:   one involves the forced sale of the debtor's stock in Yelverton Farms to his siblings; and the other involves a possible action against debtor's former spouse.

10.     While the United States Trustee does not question debtor's abilities or good intentions, he is concerned that the debtor may not be the best representative for the estate to manage, negotiate, or evaluate these recoveries insofar as they involve debtor's family members. At some point, the personal and emotional baggage of parties on all sides, risk overtaking the process, possibly to the detriment of creditors.

11.     Since these matters remain pending to some degree at this point, and in order to preserve opportunities to the extent possible, the United States Trustee files this motion seeking to convert the case to chapter 7 and to permit a chapter 7 trustee to step into the debtor's shoes in terms of assessing the best interests of the estate, and liquidating possible assets and making a distribution to creditors.

12.     There do not appear to be any unusual circumstances in this case that would result in a finding that conversion is not in the best interest of the creditors.

13.     Based upon the foregoing, the United States Trustee is entitled to an order converting this Chapter 11 case to a case under Chapter 7.

14.     Inasmuch as the grounds for this motion are set forth herein, it is requested that the requirement for a separate memorandum of points and authorities be waived.

Page 2 of 3

WHEREFORE, the United States Trustee respectfully requests that the Court enter an

order converting this case to Chapter 7 and such other and further relief as may be deemed just

and proper.

<div style="margin-left: 40%;">

Respectfully requested,
W. Clarkson McDow, Jr.
United States Trustee
Region Four


/s/ Martha L. Davis
Martha L. Davis
Acting Assistant U.S. Trustee
Office of the United States Trustee
115 S. Union Street, Suite 210
Alexandria, VA 22314
(703) 557-7180

</div>

### CERTIFICATE OF SERVICE

I certify that on the 6th day of July, 2010, I served the below named parties with true and correct copies of the MOTION OF THE UNITED STATES TRUSTEE TO CONVERT TO CHAPTER 7, NOTICE OF HEARING AND PROPOSED ORDER by first class, United States mail:

Stephen Thomas Yelverton
601 Pennsylvania Ave., N.W.
Suite 900 South
Washington, DC 20004

<div style="margin-left: 40%;">

/s/ Martha L. Davis
Martha L. Davis

</div>

EXHIBIT 2

Ronald L Gibson
ERWIN & ELEAZER, P.A.
831 E. Morehead Street, Suite 840
Charlotte, North Carolina 28202
Direct dial 704-405-2628
Fax 704-335-5433

**From:** Wendell W. Webster [mailto:WWebster@WFCPLaw.com]
**Sent:** Sunday, May 01, 2011 3:55 PM
**To:** Ron Gibson
**Subject:** RE: Activity in Case 5:09-cv-00331-FL Yelverton v. Yelverton Farms Ltd. et al Order on Motion for Extension of
Time to File

I could offer it for sale but I don't think the creditors would offer anything of value. I had another thought on the
negotiations. Why don't I ask the family to agree that the pig farm lease will not be renewed as part of the settlement
and if it is renewed I reserve the right to reevaluate Mr. Yelverton's share of the business.

WEBSTER FREDRICKSON CORREIA & PUTH, PLLC
1775 K Street, N.W., Suite 600
Washington, D.C. 20006
202.659.8510
202.659.4082 (fax)
wwebster@wfcplaw.com

EXHIBIT 3

## AFFIDAVIT

I, Wade H. Atkinson, Jr., hereby affirm under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

(1) That, I filed in August 2009 for Intervention in Case No. 5:09-cv-331-FL. I did so to be able to collect from Stephen Yelverton the sum of over $300,000, that he owed me, and who had given me a security interest for that debt in his 1,333.3 shares of stock in Yelverton Farms, Ltd. My attorney, Richard Archie, of the law firm of White & Allen, P.A., had suggested to me that I file for Intervention in Case No. 5:09-cv-331-FL.

(2) That, I had retained the law firm of White & Allen, P.A., in April 2008 to perfect under the UCC my security interest in Mr. Yelverton's 1,333.3 shares of stock in Yelverton Farms, Ltd. Mr. Archie indicated to me that there was a potential conflict of interest between their representation of me and their other clients, Phyllis Edmundson and Deborah Marm with respect to their majority stock ownership in Yelverton Farms, Ltd. However, White & Allen, P.A., never asked me to sign a conflict of interest waiver.

(3) That, on August 17, 2009, Mr. Archie of the law firm of White & Allen, P.A., executed an Affidavit that his firm had perfected under the UCC a security interest in my favor in the 1,333.3 shares of stock owned by Mr. Yelverton in Yelverton Farms, Ltd.

(4) That, at a hearing on February 24, 2010, the U.S. Bankruptcy Court for the District of Columbia ruled that my UCC security interest in Mr. Yelverton's stock was not properly perfected, and that I was an unsecured Creditor for the over $300,00 that Mr. Yelverton owed me.

(5) That, after the Bankruptcy hearing on February 24, 2010, I called Mr. Archie, and asked him and White & Allen, P.A., to assist me in filing an Appeal of the

Bankruptcy ruling as to the UCC lien on Mr. Yelverton's stock that they had failed to properly perfect. Mr. Archie and his law firm refused to help me in this matter.

(6) That, on March 17, 2010, the law firm of White & Allen, P.A., filed on behalf of Ms. Edmundson and Ms. Marm a Motion to Dismiss the Complaint of Mr. Yelverton. In that Motion, they claimed that I owned the 1,333.3 shares of stock in Yelverton Farms, Ltd., and not Mr. Yelverton.

(7) That, I was never told by the law firm of White & Allen, P.A., that they would be making any claim of ownership of the stock by me, and they never asked for my consent to make such a claim in my name. I was not an owner of the 1,333.3 shares of stock at anytime, never had possession of the stock, and never even saw the stock certificates. According to White and Allen, P.A., the stock certificates were always in the possession of their clients, Ms. Edmundson and Ms. Marm.

(8) At least since August 2009, White & Allen, P.A., knew that I was not making any claim for ownership of the 1,333.3 shares of stock in Yelverton Farms, Ltd. I had only asked them to perfect my UCC lien on the stock owned by Mr. Yelverton.

(9) That, on December 3, 2010, my unsecured claims against Mr. Yelverton of over $300,000 were Discharged by the U.S. Bankruptcy Court. I was left with nothing.

(10) That, upon information and belief, in March 2012, the law firm of White & Allen, P.A., on behalf of their clients, Ms. Edmundson and Ms. Marm, entered into a Settlement Agreement with the Chapter 7 Trustee, where they would purchase the 1,333.3 shares of stock in Yelverton Farms, Ltd., for a total price of $110,000.

(11) That, upon information and belief, at the time of the Settlement in March 2012, the law firm of White & Allen, P.A., was claiming to the Chapter 7 Trustee that I

was the owner of the 1,333.3 shares of stock and not Mr. Yelverton.   Yet, I am to get nothing from this Settlement.

(12) That, upon information and belief, the law firm of White & Allen, P.A., was making the claim to the Chapter 7 Trustee that I was the owner of the 1,333.3 shares of stock in Yelverton Farms, Ltd., and this was done for the purpose of obtaining a discounted price from the Chapter 7 Trustee for the purchase of the stock. Yet, I am to get nothing for the use of my name by White & Allen, P.A., for the financial benefit of their clients, Ms. Edmundson and Ms. Marm.

Sworn to and executed on July 12, 2013.

Wade H. Atkinson, Jr.
4530 Connecticut Ave., N.W., #404
Washington, DC 20008-4313
Tel. 202-257-8890
e-mail: wadeatkinson@hotmail.com

## CERTIFICATE OF SERVICE

I, Stephen Thomas Yelverton, Pro Se, hereby certify that a copy of this Appellant Brief was served the 22nd day of October, 2013, by e-mail or U.S Mail, First Class, postage prepaid, to the following:

Wendell W. Webster, Esq., Chapter 7 Trustee
Linda M. Correia, Esq.
Webster, Frederickson
1775 K St., NW, Suite 600
Washington, DC 20006

Joseph A. Guzinski, Esq.
Office of U.S. Trustee
115 South Union St., Suite 210
Alexandria, VA 22314

Alexandra Senyi de Nagy-Unyom, Pro Se, Creditor
1260 Twenty-First St., N.W., #901
Washington, DC 20036

Richard J. Rodgers, Esq.
600 Baltimore Ave., Suite 202
Towson, MD 21204
Counsel for Creditor Sedghi Investment Properties, LLP

Jeffrey L. Tarkenton, Esq.
Womble Carlyle
1200 Nineteenth St., N.W., Suite 600
Washington, DC 20036
Counsel for Deborah Marm

Wade H. Atkinson, Jr., Pro Se, Creditor
4530 Connecticut Ave., N.W., #404
Washington, DC 20008

Stephen Thomas Yelverton, Pro Se

31