# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: STEPHEN THOMAS YELVERTON,<br><br>Debtor.<br><br>STEPHEN THOMAS YELVERTON,<br><br>Appellant,<br><br>v.<br><br>WENDELL W. WEBSTER, PHYLLIS EDMUNDSON, DEBORAH MARM,<br><br>Appellees. | Case No. 1:13-cv-1544 (CRC)<br><br>Bankruptcy No. 09-00414 |

## OPINION AND ORDER

Stephen Thomas Yelverton is no stranger to the courts. Since entering bankruptcy in 2009, he has filed over 40 lawsuits, adversary bankruptcy proceedings, or appeals of the bankruptcy court's rulings. This particular matter involves appeals of three orders of the bankruptcy court denying various motions to reconsider the court's order approving the Trustee's settlement agreement.[1] Yelverton has also moved for sanctions against counsel for appellees—his sisters Phyllis Edmundson and Deborah Marm—which the Court will deny. In response to the sanctions motion, counsel for Edmundson and Marm request that the Court issue a pre-filing injunction against Yelverton for repeated instances of abusive and frivolous filings. The Court ordered the parties to submit briefs and record evidence regarding whether Yelverton's actions in this and other courts warrant a pre-filing injunction and held a hearing on June 27, 2014. Because of the astounding scope of Yelverton's abusive and frivolous filings in this and other courts, the Court concludes that a pre-filing injunction is warranted.

---

[1] Yelverton's appeal of the order approving the bankruptcy settlement agreement is a separate case before the Court, In re Yelverton, 12-1539 (D.D.C.).

## I. Background

The circumstances of Yelverton's bankruptcy are well documented elsewhere. <u>See, e.g.</u>, Memorandum Opinion, <u>Yelverton v. Senyi de Nagy-Unyom</u>, 13-74, at 11 (D.D.C. Nov. 27, 2013). For purposes of this opinion, the Court will provide a brief recitation of only the most relevant facts. Yelverton filed for bankruptcy in 2009. His scheduled assets included land in North Carolina, a 2006 Mercedez Benz, and litigation claims against the owners of Yelverton Farms, Ltd., a closely-held corporation that operates a pig farm in North Carolina. Bankruptcy Schedules, <u>In re Yelverton</u>, 9-414, Dkts. 22 (Bankr. D.C. May 19, 2009), 30 (May 29, 2009). Yelverton Farms is operated by Yelverton's two sisters, Phyllis Edmundson and Deborah Marm; Yelverton is a minority stock owner. <u>Webster v. Yelverton Farms, Ltd.</u>, 9-331, Dkt 3 (E.D.N.C. July 29, 2009).

After the bankruptcy court converted Yelverton's proceedings to a Chapter 7 liquidation, the appointed trustee negotiated a global settlement of Yelverton's estate, which the bankruptcy court approved. <u>Order</u>, <u>In re Yelverton</u>, 9-414, Dkt 447 (March 20, 2012). In this appeal, Yelverton challenges three bankruptcy court orders that denied successive motions: one for relief from the order approving settlement; a second to vacate the order denying relief from the order approving settlement; and a third to vacate the order denying his motion to vacate. The substance of Yelverton's appeal of these nesting-doll orders will be addressed in a separate opinion by the Court.

## II. Yelverton's Sanctions Motion

Yelverton has moved for sanctions against counsel for Edmundson and Marm pursuant to 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The purpose of Section 1927 is to "allow the court to assess attorneys' fees against an attorney who frustrates the progress of judicial proceedings." <u>United States v. Wallace</u>, 964 F.2d 1214, 1217 (D.C. Cir. 1992).

Not only are Yelverton's accusations in his motion for sanctions plainly without merit, the filing itself is abusive and vexatious. He asserts that counsel for Edmundson and Marm misrepresented to the bankruptcy court that Wade H. Atkinson, a former business associate of Yelverton's, owned Yelverton's stock in Yelverton Farms. Appellant's Mot. for Sanctions at 9–10. Yelverton has made this same accusation repeatedly to the bankruptcy court and others, and it has been rejected as baseless each time. See Mem. Decision, In re Yelverton, 9-414, Dkt. No. 681, at 6 (Bankr. D.C. Aug. 8, 2014) (finding that Edmundson and Marm had not misrepresented who owned Yelverton Farms and that no confusion existed at the time of the settlement agreement); Mem. Decision, In re Yelverton, 9-414, Dkt. No. 695, at 1–5 (Bankr. D.C. Aug 27, 2014) (finding that Yelverton did not have grounds to file an untimely motion for reconsideration based on the same fraud allegations the bankruptcy court had recently rejected); Pre-Filing Injunction, Yelverton v. Edmundson, et al., 13-1543, at 2 n.1 (N.C. Sup. Ct, Wayne Cnty. Apr. 4, 2014) (finding it "most troubling" that Yelverton had made the same baseless allegations of fraud before the North Carolina Superior Court *the day after* the same claim had been rejected by the bankruptcy court).

As Yelverton aknowledged at the hearing before the Court, he assigned his stock in Yelverton Farms to Atkinson as collateral on a loan of $300,000, but later sent Atkinson a letter revoking the stock assignment. In light of the assigment, the record is clear that Edmundson and Marm raised a legitimate concern in the bankruptcy proceeding about whether Yelverton owned the stock outright and wanted the issue resolved before negotiating with the bankruptcy trustee over Yelverton's shares. None of the records Yelverton cites show that Edmundson or Marm ever claimed that Atkinson owned the 1,333 shares. For instance, Yelverton points to Edmundson and Marm's Opposition to a Motion for a New Judgment by Yelverton in his core bankruptcy proceeding, In re Yelverton, Case No. 9-414 (Bankr. D.C. Sep. 15, 2010). That motion, however, begins by identifying Yelverton as "a minority shareholder in Yelverton Farms" and acknowledges

3

that "Atkinson now appears to have repudiated his ownership interest in the shares[.]" Id. at 2, 4. Far from proving that counsel for Edmundson and Marm maintained that Atkinson owned the stock, their filing directly refutes Yelverton's assertions.[2] Yelverton's motion for sanctions is denied.

### III.     Pre-Filing Injunction

The constitutional right of access to the courts "is neither absolute nor unconditional." In re Green, 669 F.2d 779, 785 (D.C. Cir. 1981). In response to a litigant who seeks to flood the courts with meritless claims and filings, the Court "has an obligation to protect and preserve the sound and orderly administration of justice." Urban v. United Nations, 768 F.2d 1497, 1500 (D.C. Cir. 1985) (internal citations omitted). "[I]n fashioning a remedy to stem the flow of frivolous actions, a court must take great care not to 'unduly impair . . . [a litigant's] constitutional right of access to the courts.'" Id. (internal citations omitted). By the same token, if a litigant continues to abuse the judicial process by filing frivolous, duplicative, and harassing lawsuits, "a Court may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice." 768 F.2d at 1500.

In determining whether sanctions are appropriate for abusive filings, this Court considers the "number and content" of the filings and their effect on parties and the courts. In re Powell, 851 F.2d 427, 433–34 (D.C. Cir. 1988); accord Butler v. DOJ, 492 F.3d 440 (D.C. Cir. 2007). Before barring a *pro se* litigant from future filings, the district court must provide an opportunity for a hearing, develop a factual record, and "make substantive findings as to the frivolousness of numerous actions" and "any pattern constituting harassment." Powell, 851 F.2d at 431. The

_____

[2] Yelverton also claims that counsel for Edmundson and Marm fraudulently maintained that Yelverton Farms was worthless, but he provides no support for this accusation. Even if taken as true, Yelverton's assertions amount to nothing more than a disagreement between the parties over the value of the company.

district court may only consider pending cases "for the limited purpose of determining whether the litigant has filed similar claims or for analyzing the prospective effect of the claims[.]" Id.

The Court notified the parties by order on May 21, 2014, to submit briefing on whether a pre-filing injunction was warranted. All parties to the case filed memoranda and exhibits in response to the Court's order, and a hearing with all parties was held June 27, 2014. Based upon the hearing, the parties' filings and the public record in Yelverton's many cases, a pre-filing injunction against Yelverton for abusive and frivolous filings is more than justified.

The number of Yelverton's filings clearly indicates his penchant for unduly burdening the court system. In another of Yelverton's cases filed before this Court, Judge Wilkins denied Yelverton leave to file his appeal of bankruptcy court orders *in forma pauperis*, finding he was an abusive litigant. Judge Wilkins catalogued 38 cases or appeals—excluding his core bankruptcy proceeding—filed by Yelverton from 2009 to 2013. Memorandum Opinion, Yelverton v. Senyi de Nagy-Unyom, 13-cv-74, at 11 (D.D.C. Nov. 27, 2013). Since then, Yelverton has filed at least two additional cases in this Court and the Eastern District of North Carolina, along with two new adversary proceedings in bankruptcy court. Twelve of his cases have been dismissed for lack of standing and he has not succeeded in any of his appeals of bankruptcy and district court orders against him. Id. at 13–15. In these 40-plus cases, Yelverton has filed over 150 motions, including over 50 motions to reconsider, vacate, amend, or obtain relief from a judgment or order. In this Court alone, Yelverton has filed or intervened in 18 cases since 2010 and has filed approximately 72 motions. A particularly striking example of his penchant for abusive filings is Yelverton v. Fox, 13-314 (D.D.C.), where Yelverton sued the counsel for the District of Columbia Court of Appeals who had sat on the Hearing Committee that heard ethics charges against him. In that case, Yelverton filed, among other papers, eleven motions to amend or supplement his filings, four motions for preliminary injunctive relief, and seven motions or supplements to motions to

reconsider the Court's order dismissing the case. This Court has imposed pre-filing injunctions against plaintiffs who have filed a similar number or fewer frivolous filings. See Caldwell v. Obama, 2013 WL 6094237, at *11–12 (D.D.C. Nov. 20, 2013) (five cases involving over 100 court filings regarding the identical frivolous allegations); Kaufman v. IRS, 787 F. Supp. 2d 27, 29–30 (D.D.C. 2011) (15 *pro se* cases filed in federal courts over a ten year period, almost all of which had been dismissed); Anderson v. District of Columbia Pub. Defender Serv., 881 F. Supp. 663, 665 (D.D.C. 1995) (33 complaints "against a variety of prosecutors, defense counsel (including the Public Defender), judges, [and] the Bar Counsel of the District of Columbia Bar"); Stich v. United States, 773 F. Supp. 469 (D.D.C. 1991) (15 cases in the District Court for the District of Columbia over a five year period).

The volume of filings alone would not be determinative if his arguments and assertions were generally colorable, but Yelverton repeatedly makes the same arguments before various courts, despite prior resolution against him. The fraud allegations in the motion for sanctions at issue here are a prime example. The bankruptcy court determined that neither Edmundson and Marm nor their counsel made any misrepresentations to the bankruptcy court or the trustee regarding whether Atkinson owned Yelverton Farms stock. Yet Yelverton made the same allegation in the North Carolina Superior Court, which again rejected it. Undeterred by the prior resolution of this issue, he repeats the same allegation before this Court in both his motion for sanctions and other filings. This Court, as have others before, has reviewed the substance of his allegations and finds them completely lacking in merit, as discussed above.

Likewise, Yelverton has filed numerous lawsuits in an attempt to claw-back his stock in Yelverton Farms from bankruptcy. He has filed six suits in the Eastern District of North Carolina, the United States Bankruptcy Court for the District of Columbia, and the Superior Court of Wayne County, North Carolina, all claiming breaches of fiduciary duties by Edmundson and Marm and

seeking to force a transfer of stock or distributions. <u>Yelverton v. Yelverton Farms, Ltd.</u>, 9-331 (E.D.N.C.); <u>Yelverton v. Yelverton Farms</u>, 14-365 (E.D.N.C.); <u>Yelverton v. Edmundson</u>, 10-10003 (Bankr. D.C.); <u>Yelverton v. Edmundson</u>, 10-10004 (Bankr. D.C.); <u>Yelverton v. Marm</u>, 14-10024 (Bankr. D.C.); <u>Yelverton v. Edmundson</u>, 13-1543 (N.C. Sup. Ct, Wayne Cnty.). Three of five the current appeals pending before this Court involve various orders by the bankruptcy court regarding this same property. <u>In re Yelverton</u>, 12-1539 (D.D.C.); <u>In re Yelverton</u>, 13-454 (D.D.C.); <u>In re Yelverton</u>, 13-1544 (D.D.C.).

Yelverton has also filed cases and motions for no other apparent purpose than harassment. Exhibit A is the sanctions motion in this case, which seeks sanctions against counsel for Edmundson and Marm, including counsel not even involved in the case, based on fanciful allegations of fraud that have been rejected repeatedly by this and other courts. Yelverton filed a case in bankruptcy court claiming fraud and breach of fiduciary duties by the bankruptcy trustee and counsel for Edmundson and Marm based on these same or similar frivolous allegations. <u>Ex rel. Yelverton</u>, 14-10014 (Bankr. D.C.). As stated above, he sued counsel for the D.C. Court of Appeals for determining that Yelverton's abusive conduct warranted disciplinary measures. Filings such as these, aimed at nothing more than harassing the individuals involved in cases with Yelverton, are appropriate grounds for a pre-filing injunction. <u>See</u> <u>Caldwell</u>, 2013 WL 6094237, at *11–12 (issuing pre-filing injunction against plaintiff for making "repetitive filings of meritless claims against federal officials, federal judges and private parties" who issue rulings against him or are opposing parties or counsel).

This is not the first time that a court has issued a pre-filing injunction against Yelverton. The bankruptcy court sanctioned Yelverton by relieving other parties from the obligation to respond to his filings unless so ordered by the court. <u>Mem. Decision</u>, <u>In re Yelverton</u>, 9-414 (Bankr. D.C. Sep. 10, 2013). The Superior Court of Wayne County, North Carolina issued a "Gatekeeper Order"

restricting Yelverton from filing any additional documents with the court, <u>Pre-Filing Injunction</u>, <u>Yelverton v. Edmundson, et al.</u>, 13-1543, at 6 (N.C. Sup. Ct, Wayne Cnty. Apr. 4, 2014), and noting the other pre-filing injunctions imposed upon Yelverton, including one in D.C. Family Court. <u>Id.</u> at 2–5 & nn.2–3. And in this Court, Judge Wilkins issued a pre-filing injunction in one of Yelverton's bankruptcy appeals because Yelverton had filed numerous supplemental pleadings after the appeal had been fully briefed. <u>Order</u>, <u>In re Yelverton</u> 12-1539 (D.D.C. Dec. 12. 2012) ("Yelverton shall refrain from filing additional documents without first seeking leave of Court"). Yelverton's motions for reconsideration of that order were denied, as was his interlocutory appeal to the D.C. Circuit. <u>Mandate</u>, <u>In re Yelverton,</u> 12-1539 (D.D.C. Oct. 16. 2013). After he proceeded to violate the order repeatedly, the Court issued a second order "warn[ing him] that further abuses may result in sanctions, including dismissal with prejudice." <u>Order</u>, <u>In re Yelverton</u>, 12-1539, at 2 (D.D.C. Jan. 9. 2014). Undeterred, Yelverton proceeded to file five additional motions in that case—all of which either sought reconsideration of the Court's orders or presented additional arguments in support of his bankruptcy appeal—in direct violation of the Court's multiple orders. After the Court struck his subsequent motions as being in violation of the prior orders, <u>Minute Order</u>, <u>In re Yelverton</u>, 12-1539 (D.D.C. June 3. 2014), Yelverton proceeded to move for leave to certify another interlocutory appeal and for reconsideration of all three orders.

Sadly, Yelverton's history of abusive filing is not confined to his bankruptcy proceeding. Yelverton was suspended from the practice of law before the D.C. Court of Appeals and the Federal Court of Appeals for the D.C. Circuit for similar vexatious and frivolous filings. <u>Order of Suspension</u>, <u>In re Yelverton</u>, 13-8520 (D.C. Cir. Feb. 19, 2014); <u>Order</u>, <u>In re Yelverton</u>, 13-844 (D.C. Ct. of App. Sept. 17, 2013). While representing an alleged victim in a criminal bench trial, Yelverton moved for a mistrial after the Superior Court judge's not guilty verdict, then moved to vacate the denial of his motion, then moved to vacate the order disposing of *that* motion, then

moved for recusal, then appealed, and then moved for reconsideration when he lost the appeal. <u>Report and Recommendation</u>, <u>In re Yelverton</u>, 11-069, at 2–5 (D.C. Bd. of Prof. Resp. July 30, 2013).  In response to resulting ethics charges against him, Yelverton asserted ethical violations by another lawyer in the case and the Assistant Bar Counsel.  <u>Id.</u> at 5–6.  The Board of Professional Responsibility found that Yelverton's frivolous filings had improperly burdened the court system. <u>Id.</u> at 11–12.

In sum, the record amply demonstrates that a pre-filing injunction is warranted in light of Yelverton's long history of vexatious and harassing filings.  He has clogged the court system with frivolous filings and has abused the judicial process.  This relief is therefore necessary to ensure "the orderly and expeditious administration of justice."  <u>Urban</u>, 768 F.2d at 1500.

**IV.    Conclusion**

For the reasons stated above, it is hereby

**ORDERED** that Appellant's [10] Motion for Sanctions is denied.  It is further

**ORDERED** that Appellant's [17] Motion for Reconsideration is denied.  It is further

**ORDERED** that Appellant's [18] Motion for Leave to Present New Information is granted. It is further

**ORDERED** that Appellant shall seek leave of this Court before filing any new civil action in this Court by filing a separate motion for leave to file, not to exceed three pages.  In seeking leave to file any new complaint, the plaintiff must explain what new matters are raised to warrant the filing of a new complaint.  It is further

**ORDERED** that Appellant is hereby enjoined from filing further submissions in his bankruptcy appeals pending before this Court without leave of Court.  The Appellant must include a separate motion for leave to file, no more than three pages, explaining why the filing is necessary, not duplicative, and timely to the extent it seeks to supplement his arguments or factual assertions

in his appellate briefs.  All factual assertions in such a motion must be supported by documentary evidence in the form of exhibits.

**SO ORDERED.**


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:    _____August 6, 2014_____